FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jul 12, 2023

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

SALVADOR S.,[1]

               Plaintiff,

     v.

KILOLO KIJAKAZI, Acting
Commissioner of Social Security,

               Defendant.

No.    1:22-cv-3139-EFS

**ORDER REVERSING THE
DECISION OF THE ALJ AND
REMANDING FOR FURTHER
PROCEEDINGS**

Plaintiff Salvador S. appeals the denial of benefits by the Administrative Law Judge (ALJ).  Because the ALJ failed to address Plaintiff's claimed impairment of fibromyalgia, the ALJ's decision lacks the requisite supporting substantial evidence.   The Court therefore reverses the decision of the ALJ and remands this matter for the ALJ to properly consider fibromyalgia and conduct the sequential evaluation anew.

//

---

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

# I.    Five-Step Disability Determination

A five-step evaluation determines whether a claimant is disabled.[2]  Step one assesses whether the claimant is engaged in substantial gainful activity.[3]  Step two assesses whether the claimant has a medically severe impairment or combination of impairments that significantly limit the claimant's physical or mental ability to do basic work activities.[4]  Step three compares the claimant's impairment or combination of impairments to several recognized by the Commissioner to be so severe as to preclude substantial gainful activity.[5]  Step four assesses whether an impairment prevents the claimant from performing work he performed in the past by determining the claimant's residual functional capacity (RFC).[6]  Step five assesses whether the claimant can perform other substantial gainful work—work that exists in significant numbers in the national economy—considering the claimant's RFC, age, education, and work experience.[7]

---

[2] 20 C.F.R. §§ 404.1520(a), 416.920(a).

[3] *Id.* §§ 404.1520(a)(4)(i), (b), 416.920(a)(4)(i), (b).

[4] *Id.* §§ 404.1520(a)(4)(ii), (c), 416.920(a)(4)(ii), (c).

[5] *Id.* §§ 404.1520(a)(4)(iii), (d), 416.920(a)(4)(iii), (d).

[6] *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

[7] *Id.* §§ 404.1520(a)(4)(v), (g), 416.920(a)(4)(v), (g).

## II.    Background

In September 2019, Plaintiff filed an application for benefits under Title 16, claiming disability based on low vision, depression, anxiety, stress, social anxiety, bipolar disorder, shoulder pain, and fibromyalgia.[8]  Plaintiff alleged an onset date of April 26, 2019.[9]  After the agency denied his application initially and on reconsideration, Plaintiff requested a hearing before an ALJ.  In June 2021, ALJ S. Pines held a telephonic hearing at which Plaintiff and a vocational expert testified.[10]

In August 2021, the ALJ issued a written decision denying disability.[11]  As to the sequential disability analysis, the ALJ found:

- Step one: Plaintiff had not engaged in substantial gainful activity since September 3, 2019, the application date.

- Step two: Plaintiff had the following medically determinable severe impairments: shoulder dysfunction, hiatal hernia, gastroesophageal reflux disease, severe anxiety, and depression.[12]

---

[8] AR 161, 179, 196–200, 225, 241.

[9] AR 170.

[10] AR 32–54.

[11] AR 15–26.

[12] AR 17.

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.

- RFC: Plaintiff had the RFC to perform light work, subject to the following additional limitations:

  > [H]e can occasionally reach overhead and can frequently reach in all other directions. He should not have concentrated exposure to hazards. He is limited to simple, routine work, in a workplace with no more than occasional workplace changes. He can have occasional superficial contact with coworkers and cannot have contact with the public.[13]

- Step four: Plaintiff had no past relevant work.

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as routing clerk, collator operator, and document preparer.

The ALJ found Plaintiff's medically determinable impairments could reasonably be expected to produce some of the alleged symptoms but that his statements concerning the intensity, persistence, and limiting effects of those symptoms were "not entirely consistent with the medical evidence and other evidence in the record."[14] The ALJ therefore found Plaintiff not disabled.

---

[13] AR 19.

[14] AR 20.

ORDER - 4

1    Plaintiff requested review of the ALJ's decision by the Appeals Council,

2   which denied review.  Plaintiff timely appealed to the Court.

3   ### III.    Standard of Review

4    A district court's review of the Commissioner's final decision is limited.[15]

5   The Commissioner's decision is set aside "only if it is not supported by substantial

6   evidence or is based on legal error."[16]  Substantial evidence is "more than a mere

7   scintilla but less than a preponderance; it is such relevant evidence as a reasonable

8   mind might accept as adequate to support a conclusion."[17]  Because it is the role of

9   the ALJ to weigh conflicting evidence, the Court upholds the ALJ's findings "if they

10  are supported by inferences reasonably drawn from the record."[18]  Further, the

11  Court may not reverse an ALJ decision due to a harmless error—one that "is

12  inconsequential to the ultimate nondisability determination."[19]

13

14  _____

15  [15] 42 U.S.C. § 405(g).

16  [16] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).

17  [17] *Id.* at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

18  [18] *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). *See also Lingenfelter v.

19  Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire

20  record as a whole, weighing both the evidence that supports and the evidence that

21  detracts from the Commissioner's conclusion," not simply the evidence cited by the

22  ALJ or the parties.) (cleaned up).

23  [19] *Molina*, 674 F.3d at 1115 (cleaned up).

## IV.    Analysis

Plaintiff argues the ALJ erred by (1) failing to properly assess Plaintiff's fibromyalgia, (2) improperly rejecting Plaintiff's symptom reports, and (3) improperly rejecting certain medical opinions.[20]  For the reasons that follow, the Court holds the ALJ reversibly erred by failing to address—or even mention—fibromyalgia.

**A.    Step Two: Plaintiff establishes consequential error.**

Plaintiff contends the ALJ erred by failing to consider fibromyalgia as a severe impairment at step two.

1.    <u>Step-Two, Generally</u>

At step two of the sequential process, the ALJ must determine whether the claimant suffers from a "severe" impairment, i.e., one that significantly limits his physical or mental ability to do basic work activities.[21]  This involves a two-step process: (1) determining whether the claimant has a medically determinable impairment (MDI) and, if so, (2) determining whether the impairment is severe.[22]

---

[20] *See generally* ECF No. 10.

[21] 20 C.F.R. § 416.920(c).

[22] 20 C.F.R. § 416.920(a)(4)(ii).  Objective medical evidence from an acceptable medical source is required to establish an impairment; absent such evidence, a claimant's symptom reports, a diagnosis, a medical opinion, or even a combination thereof, will not suffice. *Id.* § 416.921.

"The Social Security Regulations and Rulings, as well as case law applying them, discuss the step two severity determination in terms of what is 'not severe.'"[23]  A medically determinable impairment is *not* severe if—and only if—the "medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work."[24]  Therefore, an impairment is not severe if it has no more than a minimal effect on a claimant's physical or mental ability to do basic work activities.[25]

"Great care should be exercised in applying the not severe impairment concept,"[26] as the step-two inquiry is simply "a de minimis screening device to dispose of groundless claims."[27]  "If an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation process should not end with the not severe evaluation step.  Rather, it should be continued."[28]

---

[23] *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).

[24] *Id.*

[25] 20 C.F.R. § 404.921(a) (2010); *see* SSR 85-28 at *3, *Titles II & XVI: Med. Impairments That Are Not Severe* (S.S.A. 1985) *available at* 1985 WL 56856.

[26] SSR 85-28 at *4.

[27] *Smolen*, 80 F.3d at 1290.

[28] SSR 85-28 at *4.

1

2.    <u>Step Two & Fibromyalgia, Specifically</u>

2

The Social Security Administration has recognized that cases involving

3

fibromyalgia warrant special considerations.  This is because fibromyalgia (FM) is

4

both a "common syndrome" and "a complex medical condition characterized

5

primarily by widespread pain in the joints, muscles, tendons, or nearby soft

6

tissues."[29]  Thus, where a person asserts disability based at least partly on

7

fibromyalgia, the ALJ "must properly consider the person's symptoms when

8

[deciding] whether the person has an MDI of FM."[30]  And, where a physician has

9

diagnosed it, the ALJ is instructed to find fibromyalgia as an MDI so long as the

10

record shows—as relevant here—(1) a history of widespread pain;[31] (2) repeated

11

manifestations of 6 or more fibromyalgia signs, symptoms, or co-concurring

12

conditions; and (3) that other potential disorders have been ruled out.[32]

13

14

15

16

17

18

[29] SSR 12-2p at *2, *Titles II & XVI: Evaluation of Fibromyalgia* (S.S.A. July 25,

19

2012) *available at* 2012 WL 3104869.

20

[30] SSR 12-2p at *2.

21

[31] "A history of widespread pain" is defined as pain in all quadrants of the body and

22

axial skeletal pain that has persisted for at least 3 months.

23

[32] *See* SSR 12-2p at *3.

3.    <u>Plaintiff's Evidence of Fibromyalgia</u>

Plaintiff has been diagnosed with fibromyalgia, something he expressly noted at the administrative hearing.[33]  Indeed, Plaintiff's primary care physician (PCP)—who appears to be specially trained regarding fibromyalgia[34]—made medical decisions based on the diagnosis, including deciding against prescribing Plaintiff narcotics to address his pain.[35]  Importantly, the record also contains numerous treatment notes in which Plaintiff's providers discuss objective medical evidence indicative of fibromyalgia.[36]

//

/

---

[33] *See* AR 459 (fibromyalgia diagnosis); AR 42–43 (Plaintiff testifying, "I do have – I'm diagnosed with fibromyalgia they said, from the pain of the injuries.").

[34] *See* AR 546, 557 (listing "FM" under "specialty area/advanced training").

[35] *See, e.g.*, AR 478 (Plaintiff's PCP declining to prescribe narcotics for his pain because "that is not the proper treatment for fibromyalgia."); AR 572, 654 (treating for fibromyalgia with duloxetine and methocarbamol). *But cf.* AR 760 (Plaintiff reporting that narcotics previously provided "Complete relief" as to his pain.).

[36] *See, e.g.*, AR 460 ("Suspect fibromyalgia per PMR."); AR 476 (treating 6 tender points with lidocaine/bupivacaine injection); AR 478 ("Chronic pain of both shoulders (Primary)—suspect related to fibromyalgia. Recent EMG normal."); AR 492 ("Diffuse muscle pain, possibility of fibromyalgia.").

a.    *History of Widespread Pain & Other Symptoms*

Plaintiff's medical record supports at least a prima facia showing of a history of widespread pain as well as repeated manifestations of 6 or more fibromyalgia signs, symptoms, or co-concurring conditions.  For example, Plaintiff has a longstanding history of pain—particularly in his shoulders, back, neck, arms, occipital region, trapezius, and abdominal region—including tenderness upon palpation.[37]  Additionally, Plaintiff has repeatedly presented with other relevant symptoms and conditions, such as depression, anxiety, cognitive and memory problems, gastroesophageal reflux disease, numbness/paresthesia, headaches, and sleep problems.[38]

Notably, the Administration has stated that fibromyalgia symptoms, signs, and co-occurring conditions are "especially" noteworthy if they involve "manifestations of fatigue, cognitive or memory problems ('fibro fog'), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome."[39]  Other relevant symptoms/co-concurring conditions include—but are not necessarily limited to—muscle pain, muscle weakness, headache, pain or cramps in the abdomen, numbness or tingling, dizziness, insomnia, constipation, pain in the

---

[37] *See, e.g.*, AR 409, 440–42, 461, 466, 473, 476, 488, 526–27, 566–67, 595,

[38] *See, e.g.*, AR 434–37, 447, 468, 473–74, 477–78, 488, 491, 566–67.

[39] *See* SSR 12-2p.

upper abdomen, nausea, diarrhea, gastroesophageal reflux disorder, and blurred vision.[40]

Plaintiff's medical record contains reports and findings that are varied but match every one of the symptoms/co-concurring conditions listed above, and possibly others.  So, while Plaintiff's presentation could vary significantly from visit to visit, there is nonetheless evidence of the requisite "repeated manifestations" of fibromyalgia signs, symptoms, and/or co-concurring conditions. Moreover, the Administration has specifically noted that fibromyalgia pain **"**may fluctuate in intensity and may not always be present," and that its other signs and symptoms "may vary in severity over time and may even be absent on some days."[41]

### b.    _Ruling Out Other Conditions_

Finally, in trying to find what was causing Plaintiff's assorted symptoms, his doctors administered several tests, the results of which were apparently used to exclude other disorders that might have otherwise explained the symptoms at issue.  Plaintiff's providers performed x-rays, CT scans, electromyography (EMG),

---

[40] SSR 12-2p at n.9, n.10.

[41] SSR 12-2p at *2, *5. _See also id._ at *6 ("[T]he symptoms of FM can wax and wane so that a person may have 'bad days and good days.'").

and nerve-conduction studies (NCS); all yielded unremarkable results.[42]  Such

results are consistent with fibromyalgia,[43] yet the ALJ relied on these normal

results to discount both Plaintiff's symptom reports and at least one medical

opinion.[44]

4.    <u>ALJ's Lack of Analysis</u>

Despite Plaintiff's allegation of fibromyalgia, his diagnosis, and the

supporting evidence, the ALJ's decision never addressed fibromyalgia as a

potential medically determinable impairment, let alone its severity or effects on

Plaintiff's functioning.  Indeed, the word "fibromyalgia" does not appear anywhere

in the ALJ's decision.

In contrast to the ALJ's approach, the Administration has recognized the

importance of analyzing the longitudinal record in cases where a claimant alleges

fibromyalgia as an impairment.[45]  As discussed, this record contains substantial

---

[42] *See, e.g.*, AR 357 (normal x-rays of shoulders); AR 490 (normal NCS/EMG

studies); AR 601 (normal CT of abdomen and pelvis).

[43] *See Benecke v. Barnhart*, 379 F.3d 587, 590 (9th Cir. 2004).

[44] *See* AR 21–22, 24.

[45] SSR 12-2p at *3 ("When a person alleges FM, longitudinal records reflecting

ongoing medical evaluation and treatment from acceptable medical sources are

especially helpful in establishing both the existence and severity of the

impairment.").

evidence—including objective medical evidence—supportive of finding fibromyalgia as an impairment.  Further, even if the ALJ thought there was insufficient evidence to assess whether fibromyalgia qualified as a medically determinable impairment and/or to determine its severity, the Administration has highlighted that an ALJ may resolve such insufficiencies by arranging a consultative examination, re-contacting healthcare providers, requesting additional records, and/or asking the claimant and/or others for more information.[46]  The ALJ erred by failing to address whether Plaintiff has fibromyalgia was a medically determinable impairment.

     5.   Consequential Error

Because the ALJ never addressed the issue, substantial evidence does not support his step-two conclusion that fibromyalgia is not one of Plaintiff's severe medically determinable impairments.  An error at step two will be considered harmful only if it consequentially impacted the ALJ's analysis at other steps of the sequential evaluation.[47]  Such is the case here.

---

[46] SSR 12-2p at *4.

[47] *See Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005) ("Assuming without deciding that this omission constituted legal error [at step two], it could only have prejudiced [the claimant] in step three (listing impairment determination) or step five (RFC) because the other steps, including this one, were resolved in her favor.").

The ALJ did not merely overlook fibromyalgia at step two; his decision provides no indication that he considered fibromyalgia as a potential explanation for the varied medical findings and symptom reports throughout Plaintiff's record. More, the ALJ repeatedly relied upon evidence that appears supportive of (or at least consistent with) fibromyalgia when assessing—and discounting—other evidence. Had the ALJ found at step two that Plaintiff had fibromyalgia as a severe medically determinable impairment, it is likely that the ALJ would have assessed an RFC with additional limitations. As such, the Court cannot find that the ALJ's omission was "inconsequential to the ultimate nondisability determination."[48]

## B.  Reversal: Further proceedings are required.

The ALJ's error necessarily impacted nearly every aspect of his analysis, including his assessments of the medical opinions and Plaintiff's symptom reports. Further, because fibromyalgia may result in mental symptoms as well as physical symptoms, the ALJ's failure to address it mandates remand for a complete reevaluation of Plaintiff's impairments—both physical and mental.[49]

Though this means that the Court need not reach Plaintiff's remaining assignments of error, to provide further guidance on remand, the Court briefly

---

[48] *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006).

[49] *See Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014).

addresses a few of the more-noteworthy issues it observed during its review of the ALJ's decision and the entirety of the record.

### 1. Dr. Domingo's Medical Opinion

Plaintiff's PCP, Eileen Domingo, DO, opined that Plaintiff could not perform even sedentary work.[50]  The ALJ found that Dr. Domingo's medical opinion was not supported by her own objective findings and that it was inconsistent with the unremarkable x-rays.[51]  However, both Dr. Domingo's objective findings and the x-rays appear to be fully consistent with fibromyalgia.[52]  And while Dr. Domingo listed Plaintiff's underlying conditions as "chronic pain [bilateral] shoulders" and "chronic upper back pain," she rendered her medical opinion approximately two months before she diagnosed Plaintiff with fibromyalgia.[53]  On remand, particularly if fibromyalgia is found to be a severe impairment, the ALJ should take care in assessing whether the medical opinion is truly inconsistent with other evidence.

---

[50] AR 546, 557.

[51] AR 24.

[52] *See Revels*, 874 F.3d at 666; *see also* SSR 12-2p at *3 (explaining that the tests used to rule-out other potential disorders "may include imaging").

[53] *See* AR 545 (Feb. 2020: physical functional evaluation); *see also* AR 459 (April 2020: fibromyalgia diagnosis).

The ALJ also found Dr. Domingo's opinion was inconsistent with Plaintiff's statement that "he could lift up to twenty-five pounds."[54]  But this finding relies on a questionable interpretation of the statement at issue.  In July 2020, Plaintiff filled out a function report, which included the below snippet.[55]

Please explain how your illnesses, injuries, or conditions affect each of the items you checked. (For example, you can only lift [how many pounds], or you can only walk [how far].)

I can lift or 25 pounds or walk more then 10 minutes when i squat my legs hurt when i reach my arme in pain.

Making every reasonable inference in favor of the ALJ, the Court reads the relevant writing as stating, "I can't lift o[ve]r 25 pounds . . . ."  Even so, however, Plaintiff's July 2020 statement refers to the maximum he could lift at the time; he gave no indication as to how frequently he could lift such a weight.  In contrast, Dr. Domingo's February 2020 medical opinion accounted not only for Plaintiff's maximum lifting capacity, but also how much Plaintiff could lift *frequently*.[56]  Further, the record reflects that Plaintiff engaged in physical therapy, and the reports regarding his lifting capacity tended to improve from February 2020 to July

---

[54] AR 24.

[55] AR 246.

[56] Dr. Domingo's opinion defined "frequently" as performing the function for "2.5 to 6 hours out of an 8 hour day." AR 546. *See also* AR 545 ("difficulty lifting >5 lbs.").

ORDER - 16

2020.[57]  Plus, to the extent such limitations may be attributed to fibromyalgia, such symptoms can generally be expected to wax and wane.[58]  Thus, when the record is considered as a whole, Plaintiff's single statement from July 2020 does not amount to substantial evidence in support of rejecting Dr. Domingo's February 2020 medical opinion.

### 2. Dr. Morgan's Medical Opinion

Licensed psychologist, David T. Morgan, PhD, conducted a psychological evaluation of Plaintiff in January 2020.  Dr. Morgan diagnosed Plaintiff with panic disorder and major depressive disorder, recurrent episode, moderate.[59]  Dr. Morgan assessed Plaintiff with a marked limitation in the ability to "[p]erform activities

---

[57] *See* AR 467, 547, 557 (Feb. 2020: "Patient states that he is unable to lift anything more than 5 lb."); AR 474 (March 2020: "Unable to lift anything more than 10 lb."); AR 499 (April 2020: physical therapist noting, "Flexion, ER and Scaption remain weak at 4-/5, rhomboid strength improved from 3+/5 to 4-/5."); AR 237 (June 2020: Plaintiff's girlfriend reporting that he could lift a maximum of 10 pounds.).  Such improvement is further consistent with Dr. Domingo's opinion, as he said that with proper treatment, the assessed limitations were expected to last only 1–3 months. *See* AR 546, 557.  The ALJ made no mention of this limited duration or its significance, if any.

[58] *See* SSR 12-2p at *2, *5, *6; *Revels*, 874 F.3d at 663.

[59] AR 434.

within a schedule, maintain regular attendance, and be punctual within customary

tolerances without special supervision."[60]  The ALJ, however, found Dr. Morgan's

opinion "only somewhat persuasive," explaining that "the other evidence of record

is not consistent with any marked limitations because a consultative examiner

noted that the claimant was able to focus and concentrate on questions and answer

appropriately and could follow a three-step command."[61]

The ALJ's analysis gives short shrift to the evidence of record suggesting

Plaintiff has issues with concentration and/or memory.[62]  Indeed, in the very record

to which the ALJ cites, the examiner also found, in relevant part, as follows:

> The claimant's ability to . . . understand, remember, and carry out
> complex instructions is poor based on cognitive performance and his
> current psychiatric concerns. . . .

---

[60] AR 435.

[61] AR 24.

[62] *See, e.g.*, AR 437 (Jan. 2020: Dr. Morgan finding Plaintiff's recent and immediate

memory "challenged" and his concentration and abstract thoughts not within

normal limits); AR 450 (March 2020: psychiatric examiner noting test results

indicative of concentration problems); AR 176 (Nov. 2019: disability interviewer

noting Plaintiff demonstrated difficulty concentrating); AR 41 (June 2021: Plaintiff

testifying to difficulty paying attention); AR 201 (Jan. 2020: Plaintiff reporting

concentration problems); AR 246 (July 2020: same).

> The claimant's ability to sustain concentration and persist in work-related activity at a reasonable pace, including regular attendance at work and completing work without interruption is poor to fair . . . .[63]

The ALJ also seemingly ignored that the symptoms of many mental impairments (as with those of fibromyalgia) may tend to wax and wane—meaning an isolated "normal" finding will rarely suffice to undermine the informed opinion of a trained medical expert.[64]

Most importantly, the ALJ failed to explain why any evidence of Plaintiff demonstrating adequate focus/concentration would tend to undermine Dr. Morgan's medical opinion. Dr. Morgan focused on the effects of Plaintiff's depression and panic disorder.[65] There is little, if anything, to suggest that the marked limitation assessed by Dr. Morgan had anything to do with Plaintiff's concentration problems. Nor is there anything inherently inconsistent about

---

[63] AR 451.

[64] *See Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) (Noting it is error to reject evidence of a mental impairment "merely because symptoms wax and wane," and explaining, "Cycles of improvement and debilitating symptoms are a common occurrence . . . ."); *see also id.* at 1018 (explaining that the data points chosen by an ALJ "must in fact constitute examples of a broader development").

[65] *See* AR 434 (noting several associate symptoms, such as depressed mood, anhedonia, fatigue, and recurrent panic attacks). *But see id.* (also including "poor concentration" among the several symptoms associated with Plaintiff's depression).

Plaintiff demonstrating adequate focus/concentration while also being markedly limited in his ability to maintain regular attendance as a result of his depression and panic disorder. The ALJ therefore failed to articulate any true inconsistency, much less one that would warrant rejecting Dr. Morgan's medical opinion.

## V.    Conclusion & Instructions on Remand

Because the ALJ's failure to address fibromyalgia necessarily impacted other aspects of the sequential analysis, the Court remands this case for the ALJ to conduct the step-five evaluation anew. If necessary, the ALJ on remand shall further develop the record, which may include (1) arranging for a medical expert trained in fibromyalgia to conduct a consultative examination of Plaintiff, and/or (2) calling a medical expert trained in fibromyalgia to present testimony.

On remand, the ALJ is to expressly consider fibromyalgia as a potential medically determinable impairment and address how it weighs on his evaluation of the medical evidence and Plaintiff's symptom reports. The ALJ should account for the fact that the signs and symptoms of fibromyalgia "may vary in severity over time and may even be absent on some days."[66] The ALJ should also be mindful that physical examinations showing mostly normal results are generally considered "perfectly consistent with debilitating fibromyalgia."[67]

---

[66] SSR 12-2p at *5. *See also Revels*, 874 F.3d at 663.

[67] *See Revels*, 874 F.3d at 666.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

   With respect to the medical-opinion evidence, the ALJ must meaningfully articulate the supportability and consistency of each medical opinion.  Reviewing courts are "constrained to review the reasons the ALJ asserts."[68]  If the ALJ discounts a medical opinion based on a perceived inconsistency, the ALJ should include sufficient explanation and citations to show (1) that an inconsistency truly exists, and (2) why the inconsistency tends to undermine the medical opinion in question.[69]  Similarly, if the ALJ again discounts Plaintiff's symptom reports, the ALJ must articulate clear and convincing reasons for doing so.[70]  General findings are insufficient.[71]  The ALJ must identify what symptoms are being discounted and what evidence undermines these symptoms.[72]

---

[68] *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (quoting *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).

[69] *See* 20 C.F.R. § 416.920c(a), (b)(2), (c)(2); *see also Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) ("Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence.").

[70] *Ghanim*, 763 F.3d at 1163 (quoting *Lingenfelter*, 504 F.3d at 1036).

[71] *See Garrison*, 759 F.3d at 1010.

[72] *Id.* (quoting *Lester*, 81 F.3d at 834, and *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why he discounted claimant's symptom claims)).

Throughout the sequential evaluation process, when relying upon examples to support a finding, the ALJ should ensure that they amount to a fair representation of the record as a whole. "While ALJs obviously must rely on examples . . . the data points they choose must in fact constitute examples of a broader development . . . ."[73] It is improper for an ALJ to "reach a conclusion first, and then attempt to justify it by ignoring competent evidence in the record that suggests an opposite result."[74]

Accordingly, **IT IS HEREBY ORDERED**:

1.    The Clerk's Office shall enter **JUDGMENT** in favor of **Plaintiff**.

2.    The ALJ's nondisability decision is **REVERSED**, and this matter is **REMANDED** to the Commissioner of Social Security for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

3.    The Clerk's Office shall **TERM** Plaintiff's Opening Brief, **ECF No. 10**, and the Commissioner's Brief, **ECF No. 15**, and **CLOSE** the case.

IT IS SO ORDERED.  The Clerk's Office is directed to file this order and provide copies to all counsel.

DATED this 12th day of July 2023.

_____
EDWARD F. SHEA
Senior United States District Judge

---

[73] *Garrison v. Colvin*, 759 F.3d 995, 1018 (9th Cir. 2014).

[74] *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984).